IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 7 |
| CHERYL LEE CRAIG, | ) No. 4-04-BK-05380-EWH |
| Debtor. | ) Adversary No. 4-04-AP-00115 |
| CHERYL LEE CRAIG, | ) **MEMORANDUM DECISION** |
| Plaintiff, | ) |
| vs. | ) |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) |
| Defendant. | ) |

The trial in this adversary proceeding was held on April 25, 2005. The Debtor/Plaintiff was represented by Kasey C. Nye, Janis C. Gallego, and Jennifer L. Espino; Defendant was represented by Madeleine C. Wanslee and Raul Abad. After considering the testimony, evidence, and applicable law, the court now rules. Its findings of fact and conclusions of law are set forth herein. FED. R. BANK. P. 7052. A separate judgment will issue. FED. R. BANK. P. 9021.

I. **JURISDICTION**

This proceeding is a "core" matter over which this court has jurisdiction. 28 U.S.C. §§ 1334; 157(b)(2)(I). This case requires a determination of whether a student loan is dischargeable pursuant to 11 U.S.C. § 523(a)(8).

h:\wp\orders\craig

## II. ISSUE

Whether Debtor qualifies for an undue hardship discharge of the claims of ECMC for its federally insured student loans, pursuant to 11 U.S.C. § 523(a)(8).

## III. FACTS

### A. Stipulated Facts

The facts which the parties agree are uncontested and material are:

1. Debtor took out student loans beginning in 1990 to attend Pima Community College and the University of Arizona.

2. Debtor obtained an AA in paralegal studies in 1992 and a BA in sociology in 1996.

3. Debtor subsequently consolidated her loans in October of 2003, resulting in the loans that are at issue in this adversary proceeding.

4. Debtor owes Defendant $81,575.45 as of April 10, 2005.

5. Debtor has not made any payments on these student loans.

6. Debtor has obtained certain deferments and forbearances on her educational loans.

7. Debtor currently works as a customer service representative for Anderson Financial Network, Inc. ("AFN"). She also occasionally works as a substitute teacher at the Marana Unified School District and as a paralegal.

8. Although Debtor is a full time employee at AFN she typically works approximately 50-65 hours each two week pay period

9. Debtor earns $10.00 per hour at AFN. In addition AFN provides Debtor certain benefits including health insurance.

10. Debtor earns $80.00 a day as a substitute school teacher.

11. Although Debtor does not currently have any dependents, she had three dependents in 2004.

12. Debtor's annual income was $15,944 in 2004.[1]

13. The 2005 poverty guideline for a household of one (1) is $9,570.00.

14. Debtor has been treated for asthma, diabetes, chronic bronchitis, heart problems, acid reflux, irritable bowel syndrome, and chronic back problems.

15. AFN permits Debtor to work split shifts. The split shifts allows Debtor to work 6-10 a.m. and 3-7 p.m..

16. Debtor's employment at AFN is protected under the Family Medical Leave Act ("FMLA"), which permits her to intermittently miss up to 400 hours of work per year as a result of doctor certified medical issues but nevertheless keep her full time employment status.

B. **Additional Facts Found by the Court**

The testimony and the documentary evidence revealed additional material facts. The Debtor earned the following amounts in the few years preceding her bankruptcy filing:

| **Year** | **Gross** | **Refund** | **Exhibit** |
|---|---|---|---|
| 2001 | 16,144 | 2,021 | A and B |
| 2002 | 12,302 | 2,472 | G and H |
| 2003 | 13,855 | 2,085 | I and J |
| 2004 | 16,815 | 3,162 | C and D |

---

[1] Actually, the 2004 gross income was $16,815. (See Ex. C and D.)

h:\wp\orders\craig                                3

Case 4:04-ap-00115-JMM    Doc 28    Filed 04/27/05    Entered 04/27/05 13:34:57    Desc
Main Document    Page 3 of 13

The Debtor is a 47-year old female. Although she possesses both junior college and university degrees, she has been unable to obtain employment in the sociology or paralegal fields. Since her graduation in 1996, she has held essentially hourly-paying jobs. She is currently employed at Anderson Financial Network, Inc. ("AFNI"), and accepts occasional substitute teaching assignments at Marana Unified School District. (Ex. K.) Her hourly wages average $10 per hour. The Debtor does well at her jobs, and receives good reviews from her employer. (See, e.g., Ex. 18.) She has looked for other jobs but appears to be stable at her AFNI employment, where she receives health insurance and Family Medical Leave Act benefits. The latter is important to her because it protects her from termination due to health-related problems. It does not appear likely that she will be able to materially change this status in the future.

The Debtor now has and has had serious health issues. She suffered a heart attack in 2002, has bronchitis, asthma and lung ailments, diabetes, and other illnesses. These various ailments require the monthly intervention of, or monitoring by, several physicians, as well as a daily regimen of prescription drugs. Even with the benefit of health insurance, her out-of-pocket medical costs are approximately $350 per month. (Ex. K.)

Both Schedule J and the Debtor's answers to interrogatories paint a similar picture of her monthly expenses:

| **Item** | **Sch. J** | **Ex. K** | **Comment** |
|---|---|---|---|
| Mortgage (Trailer) | 150 | 150 | This will be paid off in December, 2006. (Ex. 4.) |
| Trailer Taxes | 6 | 6 | |
| Space Rental | 265 | 265 | |
| Home Maintenance | 5 | 0 | |
| Electricity | 100 | 50 | |
| Water | 0 | 0 | Included in space rental |
| Gas | 0 | 30 | |

| | | | |
|---|---|---|---|
| Phone | 45 | 43 | |
| Cable | 50 | 43 | |
| AOL (internet) | 0 | 29 | |
| Food | 250 | 400 | |
| Clothing | 0 | 0 | |
| Laundry | 0 | 0 | |
| Newspaper | 0 | 0 | |
| Medical Expenses | 430 | 350 | |
| Automobile[2] | | | |
| • Payment | 290 | 290 | |
| • Gasoline, etc. | 50 | 50 | |
| • Insurance | 103 | 80 | Ex. K reflects $102 per month, but Ex. 6 reflects the true amount per month |
| • Tags | 0 | 7 | |
| Life Insurance | 7 | 2 | |
| Recreation | 0 | 10 | |
| 401(k) Contribution | <u>0</u> | <u>68</u> | |
| **Totals** | 1751 | 1873 | |

Ms. Craig testified, and her tax returns reflect, that until this year, she had claimed dependents on her tax returns, and also had an earned income credit ("EIC"). These resulted in refunds each of the last four years. No longer does she support dependents, however, and no evidence indicated whether she would be eligible for the EIC in 2005 or subsequent years. Thus, it is unknown whether she will receive future income tax refunds.

---

[2] At the time of trial, the Debtor did not own a car, but this is a temporary condition. The Debtor intends to acquire a vehicle, in which case she will have these types of expenses.

As for the Debtor's food budget, she testified that she had some food delivered to her, but this saved her some time in the grocery stores, where it can be painful for her to shop.

After considering the evidence, the court would find that a more realistic budget for the Debtor is:

| Item | Amount | Comment |
| --- | --- | --- |
| Mortgage (Trailer) | 150 | |
| Trailer Taxes | 6 | |
| Trailer Space | 265 | |
| Electricity | 50 | |
| Water | 0 | |
| Gas | 30 | |
| Phone | 43 | |
| Cable | 43 | |
| AOL | 29 | |
| Food | 325 | Reduced by $75 |
| Clothing | 0 | |
| Laundry | 0 | |
| Newspaper | 0 | |
| Contingency Fund | 75 | Added by court (to include home repairs, occasional clothing, gifts, unforeseeable emergencies) |
| Recreation | 10 | |
| Medical/Dental | 350 | |
| Automobile (when acquired) | | |
| • Payment | 200 | Reduced by $90 |
| • Insurance | 80 | |

h:\wp\orders\craig

6

Case 4:04-ap-00115-JMM    Doc 28    Filed 04/27/05    Entered 04/27/05 13:34:57    Desc
Main Document    Page 6 of 13

|  |  |
|---|---|
| • Tags | 7 |
| • Gasoline | 50 |
| Life Insurance | 7 |
| 401(k) | <u>68</u> |
| **Total** | **$1,785** |

At the current time, Ms. Craig (if she obtains a vehicle), is exceeding her 2004 <u>gross</u> monthly income by $384.[3]

The only arguably discretionary spending items which are not reasonably necessary to maintain a minimal standard of living are cable TV ($43), AOL internet service ($29), and the 401(k) plan ($68). If these expenses were eliminated, the Debtor could afford to pay $140 per month on her student loans.

In addition, it is clear that the Debtor's mobile home payments of $150 per month will end in December, 2006.

This court is not inclined to interfere in a Debtor's lifestyle choice, in this day and age, to subscribe to a cable TV service or have internet access, as part of a modest, overall recreational budget. So long as she is not subscribing to premium channels, such as HBO, Starz, or the like, the court does not feel that those lifestyle choices are out of the ordinary or excessive. *See In re Kelly*, 312 B.R. 200 (1st Cir. 2004).

The 401(k) plan, however, should not be subsidized by the taxpayers. The Debtor, therefore, should pay $68 per month on her student loan. Additionally, beginning in January, 2007, the $150 that was previously spent acquiring the home can then be used toward repayment of the Debtor's student loan.

---

[3] $16,815 divided by 2 equals $1,401.25. This would leave a monthly deficit of $384. Whether the Debtor balances her expenses monthly to live within her means was not discussed at trial, but it is presumed that she does so.

Case 4:04-ap-00115-JMM    Doc 28    Filed 04/27/05    Entered 04/27/05 13:34:57    Desc
Main Document    Page 7 of 13

IV. **THE LAW**

    A. **In General.**

The Bankruptcy Code only allows for the discharge of student loans if repayment of those loans would constitute an "undue hardship" to the debtor. § 523(a)(8).[4] The Code does not define "undue hardship." The Ninth Circuit has adopted a three-part test:

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans. . . ."
>
> Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. . . ."
>
> The third prong requires "that the debtor has made good faith efforts to repay the loans. . . ."

*In re Pena*, 155 F.3d 1108, 1111 (9th Cir. 1998) (citing *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987).

Thus, in order for a guaranteed student loan to be dischargeable under 11 U.S.C. § 523(a)(8), the court must be convinced, by a preponderance of the evidence, that the claimed hardship

---

[4] Section 523(a)(8) states in pertinent part:

(a) A discharge under section 727...of this title does not discharge an individual debtor from any debt--

....

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523.

is not "garden variety," but is enduring, persistent and such that repayment will impair a person's minimal standard of living for the foreseeable future. *In re Pena*, 155 F.3d 1108 (9th Cir. 1998). In fact, the Ninth Circuit's Bankruptcy Appellate Panel held, in *In re Nascimento*, 241 B.R. 440, 444 (9th Cir. BAP 1999):

> The first prong of the Brunner Test requires more than a showing of tight finances. In defining undue hardship, courts require more than temporary financial adversity but typically stop short of utter hopelessness. The proper inquiry is whether it would be 'unconscionable' to require the Debtor to take steps to earn more income or reduce [the Debtor's] expenses.

Plaintiff bears the burden of proof, by a preponderance of the evidence, that she is entitled to a discharge of her student loans. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *accord, Nascimento*, 241 B.R. 440, 444 (9th Cir. BAP 1999). The Debtor must, therefore, satisfy all three elements of the *Pena* test before a student loan can be discharged. *Id.; In re Strauss*, 216 B.R. 638, 641 (Bankr. N.D. Cal. 1998) (each prong must be proven separately). Failure to prove any of the three prongs will defeat a debtor's case.

In weighing each of the three factors, should the court find that the Debtor is incapable of repaying the entire loan, the court may determine how much repayment a Debtor can afford, and structure such a reduced payment in order to accomplish some return on the indebtedness. *Saxman v. Educ. Credit Mgmt. BJR Corp. (In re Saxman)*, 325 F.3d 1168 (9th Cir. 2003).

Simply put, the *Pena* test does not require the Debtor to "live in abject poverty, but nonetheless "safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education . . . to dismiss their obligation merely because repayment . . . would require some major personal and financial sacrifices." *In re Faish*, 72 F.3d 298, 305-06 (3rd Cir. 1995).

Congress enacted § 523 (a)(8) in order to "ensure that education loans extended by or with the aid of a governmental unit or nonprofit institution solely on the basis of the student's future earnings potential could not be discharged by recent graduates who would then pocket all future benefits derived from their education." *In re Roe*, 226 B.R. 258, 268 (Bankr. N.D. Ala. 1998); *In re Merchant*,

Case 4:04-ap-00115-JMM    Doc 28    Filed 04/27/05    Entered 04/27/05 13:34:57    Desc
Main Document    Page 9 of 13

958 F.2d 738, 740 (6th Cir. 1992) (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 466-75, reprinted in 1978 U.S.C.C.A.N. 5787).

V. **APPLICATION OF LAW TO THE FACTS**

Except for the arguable items of cable TV, internet, and 401(k) contributions, the Debtor is currently maintaining her existence at a minimal standard of living, and has no discretionary income with which to repay her student loans in whole or in part. *In re Pena*, 155 F.3d 1108 (9th Cir. 1998); *Saxman v. Educ. Credit Mgmt. BJR Corp. (In re Saxman)*, 325 F.3d 1168 (9th Cir. 2003). Those items will be discussed below. Thus, the Debtor has proven the first prong of the *Pena/Brunner* test.

Based upon her age, health, and current low-paying employment and lack of possibilities for improving that status, Debtor's current financial condition is likely to persist for a significant portion of any repayment period which might be imposed by the court. *In re Pena, supra.* Therefore, Debtor has proven the second element of the *Pena/Brunner* test.

As for the third prong, Debtor has made a good faith effort to repay the loans, which in this case equates to keeping the lender informed as to her current whereabouts and employment status, and in having been granted numerous deferments and forbearances by the lender such that she was not in default when the chapter 7 case was filed. *In re Pena, supra.*

Merely not applying for a "William D. Ford" grant is not indicative of lack of good faith under the totality of circumstances surrounding this case. This case is distinguishable from *In re Birrane*, 287 B.R. 490 (9th Cir. BAP 2003) (young dance instructor voluntarily chose to curtail paying employment so that she could devote her time to community projects and favored non-paying endeavors). The Debtor has thus satisfied the third prong of the *Pena/Brunner* test.

Having proven in her case in all but a few discrete areas, the court will now address each:

### A. Cable TV and Internet Access

These two items cost the Debtor $72 per month. Since she only allocated $10 for recreation, the court finds that the $82 total for this type of recreation is not excessive or unreasonable. In evaluating a debtor's present circumstances--specifically, the debtor's current monthly income and expenses--the court has discretion to make determinations about the reasonableness of individual budgeted expenses. *In re Peel*, 240 B.R. 387, 392 (Bankr. N.D. Cal. 199), citing *In re Pena*, 155 F.3d 1108, 1112 (9th Cir. 1998). Thus, the court concludes that these items are not unreasonable.

### B. 401(k) Contributions

Each month, the Debtor contributions $68 to her employer's 401(k) plan. While understandable, it does not pass muster as a "necessary" expense. In the chapter 13 context, within courts of the Ninth Circuit, this expense has not been allowed. *See In re Mendoza*, 274 B.R. 522 (Bankr. D. Ariz. 2002); *In re Merrill*, 255 B.R. 320 (Bankr. D. Or. 2000); *In re Moore*, 188 B.R. 671 (Bankr. D. Idaho 1995); and *In re Cavanaugh*, 175 B.R. 369 (Bankr. D. Idaho 1994). Accordingly, the court finds that the Debtor can afford to pay $68 per month ($816 per year) on her non-dischargeable student loan debt. *See Saxman v. Educ. Credit Mgmt. BJR Corp. (In re Saxman)*, 325 F.3d 1168 (9th Cir. 2003).

### C. Mortgage Payments

Since the Debtor will make her last $150 monthly payment on her trailer in December, 2006, she will have an additional $150 per month ($1,800) per year, to devote toward her non-dischargeable student loan beginning in January, 2007.

## VI. RULING

The student loan debt by Debtor to Plaintiff is declared to be discharged, except that Debtor's obligation is not discharged as follows:

1. $68 per month from May 1, 2005 forward; plus
2. $150 per month from January 1, 2007 forward.

Alternatively, the Debtor may enroll herself in the William D. Ford grant plan, provided, and the judgment of the court shall so provide, that at the conclusion of the Ford grant period, the agency providing said program shall indemnify and hold the Debtor harmless from any tax liability which may result to the Debtor for what would otherwise be a tax upon a taxable event related to the discharge of the indebtedness.

The Plaintiff's counsel shall prepare and lodge a form of judgment consistent with this Memorandum Decision within 15 days, and serve the same upon opposing counsel.

DATED: April 27, 2005.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below this 27 day of April, 2005, upon:

Kasey C. Nye
Quarles & Brady Streich Lang LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
knye@quarles.com
Attorneys for Debtor/Plaintiff

| | |
|---|---|
| 1 | Janis C. Gallego |
| 2 | Jennifer L. Espino |
|   | c/o Kasey C. Nye |
| 3 | Quarles & Brady Streich Lang LLP |
|   | One South Church Avenue, Suite 1700 |
| 4 | Tucson, Arizona 85701-1621 |
|   | Email knye@quarles.com |
| 5 | |
|   | Madeleine C. Wanslee |
| 6 | Raul Abad |
|   | Gust Rosenfeld P.L.C. |
| 7 | 201 East Washington, Suite 800 |
|   | Phoenix, Arizona 85004-2327 |
| 8 | Email mwanslee@gustlaw.com |
|   | Email rabad@gustlaw.com |
| 9 | Attorneys for Defendant |
| 10 | Office of the United States Trustee |
|   | 230 North First Avenue, Suite 204 |
| 11 | Phoenix, Arizona 85003-1706 |
|   | U.S. Mail |
| 12 | |
| 13 | By /s/ MB Thompson |
| 14 | Judicial Assistant |